# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**WILLIE EASON,**

   **Plaintiff,**

**v.**             **No. 2:05cv149**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

   **Defendant.**

## OPINION & ORDER

Willie Eason ("Mr. Eason" or "Plaintiff") brought this action under 42 U.S.C. § 405(g) and 5 U.S.C. § 706 seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") partially denying his claim for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act.  Both Plaintiff and Defendant have filed Motions for Summary Judgment.  Docs. 10, 12.

Mr. Eason claims that the Administrative Law Judge ("ALJ") erred by (1) ignoring the treating physicians' opinions; (2) relying upon faulty vocational testimony; and, (3) failing to properly weigh and evaluate the testimony of Mr. Eason.  Doc. 11 at 3.

Because the Record shows that the ALJ's decision was based on substantial evidence, Plaintiff's Motion is **DENIED**, and summary judgment is **GRANTED** in favor of Defendant. The decision of the Commissioner is **AFFIRMED**.


I. PROCEDURAL BACKGROUND

Plaintiff filed an application for a Period of Disability and DIB on October 9, 1997, alleging disability due to lower back pain since July 21, 1997.  Record ("R.") 21.  A hearing was held before ALJ James Quigley on December 15, 1998.  R. 264-85.  ALJ Quigley issued a partially favorable decision, finding that Plaintiff had been disabled since September 7, 1999 (the date he turned 55), but not before.  R. 53-62.  On July 25, 2001, the Appeals Council issued an order remanding the case for further proceedings.  R. 97-100.

A second hearing was held on March 5, 2002 before ALJ O. Pierce Dodson.  R. 286-323.  On June 24, 2002, ALJ Dodson found Plaintiff disabled as of June 1999, but not before.  R. 21-27.  On February 19, 2005, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.  R. 6-8.

Plaintiff timely commenced the instant action for judicial review, pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, on March 10, 2005.  Doc. 1.  Defendant answered on May 24, 2005.  Doc. 4.  This Court referred the matter to Magistrate Judge F. Bradford Stillman to conduct any necessary hearing, make proposed findings of fact, and issue his recommendation for disposition of the case.  Doc. 8.  On November 10, 2005, Plaintiff was Ordered to file a motion for summary judgment, and Defendant was Ordered to file its reply or cross-motion.  Doc. 9.  Plaintiff filed his Motion for Summary Judgment and Memorandum in Support on December 12, 2005.  Docs. 10, 11.  Defendant filed its Motion for Summary Judgment and Memorandum of Support on January 5, 2006.  Docs. 12, 13.  On September 19, 2006, this Court Ordered that the previous Order referring the matter to the Magistrate Judge be rescinded and referred back to this Court for its decision.  Doc. 14.

## II. FACTUAL BACKGROUND

Plaintiff was fifty-four (54) years old at the time of the first hearing, and fifty-seven (57) years old at the time of the second hearing. R. 267-68. Plaintiff has a high school diploma, has completed one semester of auto mechanic training, and is able to read and write. R. 268, 289-90. Plaintiff lives in a house with his wife, daughter, son, granddaughter, and two great granddaughters. R. 268. Plaintiff alleges disability, due to low back pain, since July 21, 1997, and has not worked since that time. R. 21.

### A. Medical Evidence

The medical evidence reveals that Plaintiff has a long history of a low back condition. R. 23. In 1992, Plaintiff underwent a left L4 and left L5 hemilaminectomy, with removal of a left L4-5 disc herniation by Alfred P. Magness II, M.D. R. 23, 185. The surgery was successful, and Plaintiff was able to return to work for five years. R. 23, 167, 270. In July 1997, however, Petitioner bent down to pick something up and felt a pop in the right side of his back. R. 23, 160, 167, 271. Plaintiff stopped working that same month. R. 23.

On July 21, 1997, Plaintiff presented to OBICI Hospital with complaints of pain in his right paraspinous muscle region. R. 23, 160-61. X-rays of Plaintiff's lumbar spine showed status post laminectomy changes at the L5 level with mild degenerative changes, but no other abnormality of his spine. R. 23, 161. Physical examination findings were also relatively within normal limits, and Plaintiff was diagnosed as having an acute lumbosacral musculoskeletal strain. R. 23, 160. He was prescribed medication and released from the hospital in stable condition. Id.

Plaintiff was seen at the office of David F. Walker, M.D. on July 30, 1997, with complaints of continued back pain, as well as tingling and numbness in his right lower extremity.

R. 23, 174.  Physical examination findings reveal that Plaintiff was in discomfort and had tenderness in the paraspinal region of the right side of his lumbosacral spine.  R. 23, 174. Ipsilateral straight leg testing was remarkable for complaints of pain, but the contralateral straight leg test was negative, and there was no evidence of any motor or sensory deficits.  R. 23, 174.  Plaintiff was diagnosed as having right low back pain with radiculopathy, and was referred to Dr. Magness, an orthopedic surgeon.  R. 23, 174.

On August 12, 1997, Dr. Magness performed a physical examination and found that though Plaintiff complained of pain with right straight leg rising, his motor examination revealed fairly good strength throughout, and sensation to pinprick was intact.  R. 23, 185.

Dr. Magness sent Plaintiff for an MRI scan, which was performed on August 19, 1997. R. 23, 181-82.  The MRI showed that Plaintiff was status post laminectomy at the L5 level, without evidence of any recurrent or residual disc herniation of this level nor any other levels. R. 23, 181.  There was also no evidence of any spinal stenosis, except for mild lateral recess stenosis at the L3-4 level.  R. 23, 181.  Dr. Magness reported that these were only postoperative changes of Plaintiff's lumbar spine.  R. 23, 180.  His impression was that Plaintiff's back pain was only mechanical in nature, since he had good strength throughout and no neurological deficits.  R. 23, 180.

Dr. Mangess gave Plaintiff a prescription for Darvocet – 100 and ordered physical therapy, which Plaintiff underwent at Suffolk Physical Therapy Center.  R. 23, 162-68, 180. Progress notes reveal that Plaintiff experienced some reduction in his symptoms, but he continued to have some mild irritation in his low back.  R. 23, 167.

Plaintiff continued to be managed conservatively under Dr. Magness' services and, on

February 4, 1998, Dr. Magness released Plaintiff to light work activity.  R. 23, 191, 270.

Plaintiff did not, however, return to work for longer than one week because his employer did not

have any light duty work available.  R. 23, 204, 270.

Dr. Magness' progress notes reveal that Plaintiff's condition remained relatively the same

from this time until June 1999, when he began complaining of increased pain in the left side of

his back and muscle spasms.  R. 23, 238.  Physical examination findings of June 3, 1999, reveal

that Plaintiff continued to have adequate strength in his lower extremities, but he tended to break

away with left foot dorsiflexion testing.  R. 23-24, 238.  Left straight leg raising was also

positive at 60 degrees.  R. 24, 238.

Dr. Magness ordered MRI scanning, which was performed on June 7, 1999.  R. 24, 235,

238.  This study again showed the post-operative changes on the left at the L5 level, and also

discovered right paracentral disc herniation at the L3-4 level.  R. 24, 235.

Dr. Magness has continued to manage Plaintiff conservatively with medication and

physical therapy.  R. 24, 249-60.  He has also undergone trigger point injections for his pain, and

Dr. Magness has suggested that Plaintiff may want to consider a prophylactic operation to

decompress his spinal cord.  R. 24, 242.

### B. Testimony in the Record

*1. Plaintiff's Testimony*[1]

Plaintiff's past relevant work is as a tea blender/processor and palletizer for the Lipton

Tea Company.  R. 269, 275.  Plaintiff testified that his position as a tea blender/processor

---

[1]All statements made regarding the Plaintiff's current condition relate to the date of
testimony: March 5, 2003.  Doc. 288.

required him to "dump sugar and tea bags" and to "lift and carry fifty-five gallon drums" weighing approximately 200 to 300 pounds. Doc. 11 at 3; R. 292. Plaintiff's work as a palletizer required him to unload tea from the conveyor belt and stack it on pallets. Doc. 11 at 3-4; R. 293. Plaintiff testified that this required him to lift approximately sixty (60) pounds. Id. at 4; R. 293.

Plaintiff testified that his biggest problem began in 1997 with his lower back. Id.; R. 293. He stated that pain in his lower back prevented him from bending over, from reaching, and caused a constant pain running down his leg. Id.; R. 296. He testified that doctors told him that he had a pinched nerve. Id. The only thing that eased the pain was medication and lying down. Id.; R. 297.

Plaintiff walks with a cane, and testified that his condition, though slightly better than it was in 1997, has not changed significantly. Id.; R. 298 (testifying that his condition was approximately twenty percent better); cf. Doc. 11 at 5 (stating that his condition in 1997 "was far worse than what it is even now"). Plaintiff testified that he can now get out of bed and shower on his own. Id. at 4; R. 298. Plaintiff stated that in 1997, he could only walk a few yards before he experienced pain, and now he can walk a quarter of a mile. Id. at 5; R. 301. He stated that in 1997, he could stand for two hours, and now he can stand for three to three and a half hours. Id.

In February 1998, Dr. Magness released Plaintiff to light duty work. Id.; R. 302. He performed this light duty work for one week, when he was told by his employer to resume his regular job. Id.; R. 303. He resumed his regular job, but testified that he had trouble performing those duties, specifically where he was required to reach above his shoulders. Id. He testified that he stopped working because he could not perform his regular job. Id.

Plaintiff testified to other ailments that he suffered with during the time of his alleged disability. Plaintiff was treated for a broken right ankle, and the swelling that occurred afterward, during 1997. Id.; R. 298-99. He treated the swelling by soaking it in Epsom Salt and keeping his foot raised. Id.; R. 299. Plaintiff testified that pins were put in his ankle sometime in 1998, and those pins remain there. Id.; R. 304. Plaintiff also testified that beginning in December 1997, he began to notice that his feet were persistently cold and numb. Id. This problem is ongoing. Id. Plaintiff also stated that he suffers from arthritis and muscle spasms in his neck. Id.; R. 299. He treats this with a hot pad and pain pills. Id.

### 2. Vocational Testimony

Robert Edwards ("Vocational Expert") testified on behalf of the Social Security Administration. Id.; R. 306. The Vocational Expert testified that Mr. Eason's previous work at the Lipton Tea Company, as palletizer and tea blender, qualified as heavy unskilled labor. R. 307. The Vocational Expert, given Mr. Eason's characteristics as established in the Record, stated that Plaintiff could perform several light level positions in the United States economy, including cashier, information clerk, and unarmed security guard. Doc. 11 at 5-6; R. 308. He also testified that Plaintiff could perform work at the sedentary level, including surveillance systems monitor and sedentary office clerk. Doc. 11 at 6; R. 308. In explaining the classifications given to the listed positions, the Vocational Expert stated that the light labor positions were contingent on the ability of Plaintiff to use a stool, and the number of available positions had been adjusted downward to reflect only those light level positions where a stool may be used.[2] R. 310.

---

[2]Following cross-examination by Plaintiff's attorney, the Vocational Expert adjusted his assessment, conceding that only the cashier position should be classified as light, and all other

The Vocational Expert testified that if Plaintiff were to suffer mild to moderate pain, that did not significantly interfere with his ability to maintain concentration or attend to a task, this would not interfere with his ability to work in the stated positions.  R. 308.  However, he did state that moderate to severe pain on a frequent basis resulting in difficulty maintaining concentration or attending to tasks, would prevent him from being able to perform the positions given.  Id.

## III. STANDARD OF REVIEW

### A. Review of the Commissioner's Decision

The role of the court in the administrative scheme established by the Social Security Act is a limited one.  The court's review is restricted to a determination as to whether there is substantial evidence to support the ALJ's conclusion that plaintiff failed to meet the conditions for entitlement pursuant to the Act.  See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence is "more than a mere scintilla" of evidence, but only such evidence "as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

In reviewing for substantial evidence, the court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Craig, 76 F.3d at 589.  Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)."  Craig, 76 F.3d at 589.  The denial of benefits will be

---

positions, when a stool was employed, would be considered sedentary.  R. 310-11.

reversed only if no reasonable mind could accept the record as adequate to support the determination.  Richardson, 402 U.S. at 401.  If substantial evidence exists for the Commissioner's findings, and those findings were reached through application of the correct legal standard, the conclusion must be affirmed.  Craig, 76 F.3d at 589; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966).

Under Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984), a denial of benefits is not supported by substantial evidence if the ALJ "has not analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits."  The issue before this Court is thus whether the ALJ's alleged failure to give due credit to the treating physician's opinion, Mr. Eason's testimony, and the testimony of the vocational expert, requires a finding that the ALJ's determination is not supported by substantial evidence.  See id.

### B. Entitlement to Disability Benefits

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title XVI of the Act as the

inability to do any substantial gainful activity[3] by reason of any medically determinable physical or mental impairment[4] which can be

---

[3]"Substantial gainful activity" is work that (1) involves doing significant and productive physical or mental duties and (2) is done (or intended) for pay or profit.  20 C.F.R. § 404.1510; § 416.910 (2004). Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572 (2004).

[4]"Physical or mental impairment" is defined in section 223(d)(3) of the Social Security Act, Title 42 U.S.C. § 423(d)(3), as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a) (2004); <u>see also</u> SSI 42 U.S.C. §§ 423(d)(1)(A) (1998) and DIB 416(i)(1)(A). To meet this definition, the claimant must have a "severe impairment"[5] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[6] 20 C.F.R. § 404.1505(a) (2004).

In evaluating whether a claimant is entitled to disability benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. Under the regulations, an ALJ must consider, in sequence, whether a claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or equals a condition contained within the SSA's official listing of impairments, (4) has an impairment which prevents past relevant work, and (5) if not, has an impairment that prevents him from any substantial gainful employment. 20 C.F.R. §§ 404.1520 and 416.920. An affirmative answer to one, or negative answers to questions two or four, results in a determination of no disability. <u>Id.</u> Affirmative answers to three and five establish disability. <u>Id.</u>

The claimant bears the burden of production and proof during the first four steps of the

---

[5] The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2004).

[6]The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2 (2004). However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a vocational expert to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. § 416.920(f) (2004); § 404.1520(f) (2004); <u>Heckler v. Campbell</u>, 461 U.S. 458, 466 (1983); SSR 83-10.

inquiry.  See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam).  If the claimant can

carry his burden through the fourth step, the burden shifts to the Commissioner to show that

other work is available in the national economy that the claimant can perform despite his

condition.  See id.

IV. ANALYSIS

To qualify for a period of disability and DIB under sections 216(i) and 223 of the Act, 42

U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these

sections, be under age 65, file an application for disability insurance benefits and a period of

disability, and be under a "disability" as defined in the Act.  Mr. Eason meets all of the

non-disability requirements of the Social Security Act, and the ALJ held that he was under a

disability as of June 1999.  R. 25-26.  However, the ALJ found that Plaintiff was not disabled at

any time before that date, and was thus not entitled to disability benefits for the period Mr.

Eason's alleges his disability began, July 21, 1997, through June 1999.  R. 22, 26.

In reaching it's decision, the ALJ analyzed Mr. Eason's case under the five-step inquiry

provided by the Social Security regulations.  See 20 C.F.R. §§ 404.1520 and 416.920.  The ALJ

first found that Plaintiff has not engaged in substantial gainful activity following the alleged

onset of disability on June 21, 1997.  R. 22.  Applying the second step, the ALJ determined that

Mr. Eason's lower back impairment was severe, because he suffered from the residual effects of

an L5 laminectomy and right parcel disc herniation at the L3-4 levels.  Id.  The ALJ noted,

however, that though Plaintiff did have the residuals of a right ankle fracture, this was not a

severe impairment because the x-rays did not show evidence of any arthritis, and because he did

not seek any substantial treatment for this injury since January 15, 1999.  Id.  Third, the ALJ

-11-

found that though Plaintiff's low back impairment was severe, the evidence on the Record did

not establish that the claimant had an impairment, or combination of impairments, severe enough

to meet or equal the requirements of any list of impairments presumed to be disabling, as

contained in the Social Security regulations, on or before September 7, 1999.  Id.  The ALJ noted

that "[n]o treating or examining physician has mentioned findings equivalent in severity to the

criteria of any listed impairment."  Id.  In the fourth step of his inquiry, the ALJ found that

Plaintiff's low back impairment, while not sever enough to meet the requirements of any listed

disabilities, was nevertheless severe enough to preclude him from performing any of his past

relevant work as a tea brewer and pallitizer.  Id.

Once the claimant established that he was unable to perform any past relevant work as a

result of his impairments, as Plaintiff had, the burden shifted to the Commissioner to show that

there are jobs that exist in significant numbers in the national economy which the claimant could

perform, consistent with his medically determinable impairments, functional limitations, age,

education, and work experience.  Id.  Mr. Eason's characteristics, relevant to this inquiry,

included that he was a man of 53 years of age at the time of the alleged onset of disability, with a

high school diploma and twenty-three years as a tea blender/processor and palletizer, who can

lift no more than twenty pounds occasionally and ten pounds frequently, is unable to engage in

prolonged standing or walking, and must avoid bending or stooping.  R. 307, 309.  After

reviewing the evidence on the Record, including the testimony of the Vocational Expert, the ALJ

determined that during the period between Plaintiff's alleged onset date, July 21, 1997, and June

1999, Mr. Eason "had the residual functional capacity to perform a full range of light work

activity and there were jobs . . . which existed in significant numbers in the national economy

which the claimant could have performed consistent with his medical and vocational factors." R. 22.  The ALJ concluded, however, that as of June 1999, Plaintiff's condition has so deteriorated as to render him "disabled" as proscribed by Vocational Rule 201.12 and § 201.00(g) of Appendix 2 to Subpart P of Social Security Administration Regulations No. 4.  Id.

        In reaching his conclusion, the ALJ relied on the examination findings of Drs. David F. Waller, Plaintiff's family physician, and Alfred P. Magness, an orthopedic surgeon.  The ALJ gave substantial weight to the medical records of these doctors during the period of time when Mr. Eason alleges he became disabled.  Notably, Dr. Magness examined Plaintiff in August 1997, immediately after the alleged onset, and found that though Mr. Eason complained of pain, his motor examination revealed fairly good strength throughout and sensation to pinprick was intact.  Id.  Following treatment with medication and physical therapy, Plaintiff's condition remained relatively unchanged until June 1999, when he began complaining of increased pain and muscle spasms.  Id.  Relying substantially on this medical evidence, the ALJ determined that Mr. Eason was disabled as of June 1999, and not before.  Id. at 24.  He found that in light of the medical records, specifically that Dr. Magness released Plaintiff to light labor and the conservative treatment that Plaintiff received, Mr. Eason's testimony regarding disability before June 1999 was not wholly reliable.  Id.

        The ALJ thus concluded that "based on the application filed on October 9, 1997, the claimant is entitled to a period of disability commencing June 1999, and to disability insurance benefits under Sections 216(I) and 223, respectively, of Title II of the Social Security Act, as amended, and in accordance with the foregoing findings of fact and conclusions of law, but not prior thereto."  Id. at 26-27.

Mr. Eason argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ ignored the opinions of the treating physicians; (2) the ALJ relied upon faulty vocational testimony; and, (3) the ALJ failed to properly weigh and evaluate the testimony of Mr. Eason.  The Court shall address each claim in turn.

## A. Opinions of Treating Physicians

Plaintiff first claims that "[t]he Administrative Law Judge improperly rejected the opinion of the treating doctors, which is aptly supported by the record; thus, [the ALJ's] decision cannot stand."  Doc. 11 at 10.  Specifically, Plaintiff alleges that the ALJ failed to apply the five-factor test required by the Social Security guidelines for declining to give controlling weight to a treating physician's opinion.  Id.; see 20 C.F.R. §§ 416.927 and 404.1527.

This argument is simply not supported by the Record, or by the ALJ's opinion.  On its face, the ALJ opinion appears to give substantial weight to the records and opinions of Drs. Waller, Magness, and Kells.[7]  See Docs. 23-25.  At no point is the opinion of a physician who treated Mr. Eason's lower back pain discredited.  Id.  The only physician whose opinion is not given full weight is that of Dr. Kells, whose treatment was limited to Plaintiff's broken ankle. Id.  The ALJ found that the Record shows residual effects from Plaintiff's ankle injury were not severe, and do not support a finding of disability.  Doc. 24.  To this end, the ALJ noted the specific evidence in the Record that contradicted Dr. Kells' opinion.  Id.

---

[7]Plaintiff notes that the ALJ also failed to give sufficient weight to the opinions of Drs. Rice and Thomas.  Doc. 11 at 12.  Plaintiff does not state why Dr. Rice's opinion is relevant. See Doc. 11 at 12.  Further, the five-step analysis demanded by Plaintiff was sufficiently performed by ALJ Quigley, who gave several reasons why Dr. Thomas' opinion was rejected. Doc. 57.  Specifically, that Plaintiff was never tested for lumbar or extremity dysfunction or pain, and his conclusions appear to be based entirely on the verbal allegations and complaints of Mr. Eason.  Id.  Accordingly, the ALJ did not err in failing to address these doctors' opinions.

The ALJ did give substantial weight to the Record as it relates to Dr. Magness, who treated Mr. Eason's low back pain from 1992, onward.  See Docs. 23-25.   In finding that Plaintiff was not disabled prior to June 1999, the ALJ relied on the fact that Dr. Magness allowed him to return to light work in February 1998, only seven months after the alleged onset of Plaintiff's disability, from which it can be implied that a doctor would not send a disabled patient to work he believed could not be done.  Doc. 24.  Further, Dr. Magness concluded that, at the time he allowed Plaintiff to return to work, Plaintiff was capable of standing or walking for a total of seven to eight hours.  R. 189; cf. Doc. 11 at 12 (Plaintiff incorrectly claims that Dr. Magness stated that Plaintiff could not stand or walk for two hours without an opportunity to sit). The ALJ also cited the records of Dr. Waller, Plaintiff's family physician who first examined Plaintiff and referred him to Dr. Magness, to the extent that they related to Mr. Eason's disability.  Id.

Mr. Eason's claim is without merit, because the ALJ did not discredit the opinions of treating physicians.  Indeed, the ALJ gave substantial weight to the opinion of Dr. Magness, who treated Mr. Eason throughout his trials with back pain.  The deference given the treating physicians in declining disability prior to June 1999, is the very same deference given by the ALJ in support of the finding that Plaintiff was disabled as of June 1999, when Dr. Magness found that Mr. Eason's condition had worsened.  Doc. 24-25.

The Court **FINDS** that there is substantial evidence to support the ALJ's weighing of the medical evidence, including the opinions of Plaintiff's treating physicians.  Accordingly, Plaintiff's first claim is **DENIED**.

### B. Testimony of the Vocational Expert

Plaintiff next claims that the "ALJ improperly concluded that Mr. Eason is capable of performing light duty jobs which are clearly outside of his limitations." Doc. 11 at 13. Plaintiff bases this claim on the Vocational Expert's testimony and Plaintiff's attempts at the hearing to undermine the Vocational Expert's opinion that he could perform light work, in addition to sedentary work. Doc. 11 at 13. Plaintiff alleges that the Vocational Expert's testimony cannot be reconciled with the Dictionary of Occupational Titles ("Dictionary"), because the Dictionary does not include options for sitting and standing, as required for Plaintiff, in defining two of the light jobs[8] the Vocational Expert testified to.[9] Id. Plaintiff further alleges that the ALJ failed to reconcile the Vocational Expert's testimony as to what amount of pain Plaintiff could and could not tolerate in order to work, with Plaintiff's medical records which allegedly reflect that Plaintiff suffered from more pain between 1997 and 1999, than he suffers from today. Doc. 11 at 15. Finally, Plaintiff alleges that the ALJ erred in finding that Plaintiff could perform work on a sustained and continuous basis, because the ALJ allegedly never determined that Plaintiff could work a 40-hour work week. Id. at 15-16.

### 1. Light and Sedentary Exertional Classification

Plaintiff is correct that the Vocational Expert conceded that two of the three positions he testified were light level jobs were in fact sedentary. R. 310-11 (the position of unarmed security job could not be performed if Plaintiff could not stand for more than one hour per day); R. 320

---

[8]Booth cashier and information clerk.

[9]This controversy is important because it underlies the date by which Plaintiff could receive DIB under the Social Security rules. Under the rules, if Plaintiff could perform only sedentary jobs, he would be disabled as of the alleged onset date. Social Security Rule 201.12. However, if he could perform light work, Plaintiff would be disabled only as of the date of his 55th birthday, September 7, 1999. Rules 202.13 and 202.04.

(the position of information clerk would be sedentary of a stool were available); R. 319 (the

position of cashier is a light level job because it requires the lifting of items of up to 20 pounds

and could be performed by Plaintiff if a stool were available).  The transcripts of the Vocational

Expert's testimony reflect that there was much discussion of the exact duties required by the

position of cashier, how many positions of such type exist, and on what information the

Vocational Expert based his opinion.  See Docs. 312-13, 319-322.  Though Plaintiff did his best

to undermine the Vocational Expert's testimony, and was partially successful, the Court **FINDS**

that there is substantial evidence to support the ALJ's finding that Plaintiff was capable of

performing at least one light level position, because he met the terms of the cashier as described

by the Vocational Expert and as defined by the Dictionary.  This claims is thus **DENIED**.

### 2. Vocational Testimony and the Dictionary of Occupational Titles

Plaintiff's second claim is likewise without merit.  Plaintiff alleges that the ALJ erred by

relying on the opinion of the Vocational Expert, whose classification of cashier as light level

work varied from the definition provided in the Dictionary.  Doc. 16.  The Vocational Expert

relied on his common experience to supplement the terms of the Dictionary's definition of

"cashier," finding that only a percentage of cashier positions provide stools, and adjusted his

estimate of available positions accordingly.  Doc. 310.  The Vocational Expert was found

qualified and the opinion he gave reflected his experience as a vocational rehabilitation expert

since 1989 in the Virginia Beach area.  Doc. 306, 312.  Plaintiff did not challenge the Vocational

Expert's qualifications at the hearing, and has presented no evidence to controvert the

Vocational Expert's finding that sufficient positions exist of this type both in Plaintiff's local

area, and nationwide.  Accordingly, the Court **FINDS** sufficient evidence to support the ALJ's

finding that the cashier position was a light level position.  Plaintiff's claim is **DENIED**.  The

ALJ is not bound by the Dictionary where common experience may supplement its terms.

### 3. Determination of Residual Functional Capacity

Finally, Plaintiff claims that the ALJ erred by failing to make a finding of the maximum

amount of work Plaintiff could perform in violation of 20 C.F.R. § 404.1520, as explained in

Social Security Ruling ("Ruling") 96-8p.  Doc. 11 at 16.  This claim is unfounded as

unsupported by the decision upon which it relies.  Nowhere in the Ruling does it state that the

ALJ must make an explicit finding of the Plaintiff's maximum capacity in the terms that Plaintiff

is demanding.  Rather, the Ruling states that the residual functional capacity ("RFC") of a person

being evaluated for disability "is not the least an individual can do despite his or her limitations

or restrictions, but the most."  Ruling 96-8p.  In commenting on this requirement, the Ruling

explains that this may be expressed in terms of exertional level (e.g., "sedentary" or "light") and

that "it is necessary to assess the individual's capacity to perform each of these functions

[associated with the exertional level] in order to decide which exertional level is appropriate and

whether the individual is capable of doing the full range of work contemplated by the exertional

level."  Id.

The ALJ's decision complied with the tenets of the Ruling, and was supported by

substantial evidence.  The ALJ expressly stated that Plaintiff was capable of light level work

between July 1997 and June 1999.  Doc. 25 (ALJ made finding that "claimant had the residual

functional capacity to perform a full range of light work activity.").  In support of this finding,

the ALJ recounted the medical evidence on the Record, including records relating to Plaintiff's

physical capabilities as compared with the requirements of light and sedentary work.  The ALJ

gave particular weight to Dr. Magness' grant of permission for Plaintiff to return to light work in February 1998, and addressed the portions of Plaintiff's testimony that the ALJ found "not totally credible" insofar as it conflicted with the medical evidence in the Record. Doc. 24. The Court thus **FINDS** that ALJ complied well with the provisions of the Ruling on which Plaintiff relies, and that his decision was based on substantial evidence. Accordingly, Plaintiff's claim is **DENIED**.

### C. Plaintiff's Testimony

Plaintiff's final claim is that the "Administrative Law Judge improperly assessed Easton's testimony." Doc. 11 at 16. Plaintiff claims, specifically, that the ALJ erred in not examining Plaintiff's subjective complaints within the two-step analysis articulated in <u>Craig v. Chater</u>.[10] Doc. 17-18; <u>see</u> 76 F.3d 585, 589 (4th Cir.). Doc. 11 at 18. This claim is without merit.

While Plaintiff appropriately asserts that <u>Craig</u> is required in analyzing the weight to be given Plaintiff's subjective complaints regarding pain, he misunderstands that import of its

_____

[10]The <u>Craig</u> Test provides that:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. §§ 416.929(b) & 404.1529(b). . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. See 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1).

<u>Craig</u>, 76 F.3d at 594.

holding.  Doc. 11 at 17.  Craig circumscribes the showing required to determine the degree of

pain a claimant is suffering in evaluating his claim for DIB.  Craig, 76 F.3d at 594.  While

Plaintiff is correct that subjective evidence is important for determining severity of pain;

however, he fails to acknowledge Craig's limitation on the weight to be given Plaintiff's

testimony: subjective evidence "need not be accepted to the extent [it is] inconsistent with the

available evidence, including objective evidence of the underlying impairment, and the extent to

which that impairment can reasonably be expected to cause the pain the claimant alleges she

suffers.  Id. at 595 ("claims of disabling pain may not be rejected solely because the available

objective evidence does not substantiate the claimant's statements as to the severity and

persistence of her pain") (internal quotations omitted).  While due respect must be given the

Plaintiff's testimony, this testimony is not controlling where it conflicts with the weight of the

evidence in the Record.

     The ALJ's opinion carefully considered the objective medical evidence under the

threshold inquiry described in Craig.  Doc. 22-24 (thoroughly examining Plaintiff's medical

record, including documented claims of pain).  Further, the ALJ found that Plaintiff's testimony

was only partially credible, and specifically noted which portions he found incredible and why.

Doc. 24.  The ALJ gave credit to both the subjective and objective evidence on the Record, and

noted where the evidence was inconsistent and how such an inconsistency affected his decision.

The Court thus **FINDS** that there is substantial evidence to support the weight that the ALJ gave

to Plaintiff's testimony.  This final claim is **DENIED**.

## V. CONCLUSION

     After reviewing the full record, it is clear that the ALJ thoroughly examined the proffered

facts, evidence, and testimony.  The Court **FINDS** that substantial evidence supports the ALJ's

decision, and **GRANTS** summary judgment to the Defendant.  Plaintiff's Motion for Summary

Judgment is **DENIED**.  The decision of the Commissioner is **AFFIRMED**.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

Plaintiff is advised that he may appeal from this Opinion and Order by forwarding a

written notice of appeal to the Clerk of the United States District Court, United States

Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received

by the Clerk within sixty (60) days from the date of this Opinion and Order.  If Plaintiff wishes

to proceed in forma pauperis on appeal, the application to proceed in forma pauperis is to be

submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street,

Richmond, Virginia 23219.

It is so **ORDERED**.


_____/s/_____
                            HENRY COKE MORGAN, JR.
                            UNITED STATES SENIOR DISTRICT JUDGE


Norfolk, Virginia
September 25, 2006